UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>G.W. PROPERTIES, L.P., *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 15-cv-02443-BAS(BLM)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 14]** |

　　　　Plaintiff Chris Langer ("Plaintiff") commenced this action against Defendants G.W. Properties, L.P.; Platt Management, Inc.; and Reprohaus Corp. (collectively, "Defendants") on October 29, 2015, alleging violations of the Americans with Disabilities Act and California's Unruh Civil Rights Act. This action arises from an incident in September of 2015 at a parking lot operated and leased by Reprohaus Corp. ("Reprohaus") from the remaining Defendants, where Plaintiff attempted to park in the lot, but was unable to find a handicap-accessible parking space. Defendants move to dismiss for lack of subject matter jurisdiction. (Defs.' Mot. 9:3–6, ECF No. 14.) Plaintiff opposes. (Pl.'s Opp'n 1:2–6, 10:2–3, ECF No. 15.)

//

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Defendants' motion to dismiss.

I.    BACKGROUND

Reprohaus is a small commercial printing business located at 1400 L. Street, San Diego, California, 92101. (Taing Decl. ¶¶ 2–3, ECF No. 14-3.) On April 1, 2015, Reprohaus began its current lease of the property. (*Id.* ¶ 4.) G.W. Properties, L.P. and Platt Management, Inc. are the owners of the property. (Compl. ¶ 3, ECF No. 1.) Tito Taing is the owner and President of Reprohaus. (Taing Decl. ¶ 2.) Reprohaus's gated parking lot is surrounded by an eight-foot high fence with barbed wire at the top. (*Id.* ¶¶ 5–6.) Normally, Reprohaus's parking lot is not open to the public and is available exclusively to Reprohaus's employees and commercial clients. (*Id.* ¶ 5; Defs.' Mot. 1:4–5, ECF No. 14.) Reprohaus is located five blocks from Petco Park. (Defs.' Mot. 3:7–10.) There are no handicap-accessible parking spaces in the Reprohaus parking lot. (*Id.* 6:14–15; Compl. ¶¶ 13–14.)

In the summer of 2015, Mr. Taing allowed the Reprohaus parking lot to be made available to members of the public. (Taing Decl. ¶ 7.) On a limited basis, patrons of events at Petco Park were able to park in the lot. (*Id.*) During these events, the lot was managed by employees of Reprohaus. (Defs.' Mot. 1:6–8.) Based on this public parking arrangement, patrons of Petco Park paid a fee in exchange for the convenience of parking in the Reprohaus lot. (*Id.* 6:10–11; Compl. ¶ 10.)

Mr. Langer is a paraplegic who cannot walk and who uses a wheelchair for mobility. (Compl. ¶ 1.) In September of 2015, Mr. Langer attended a baseball game at Petco Park. (*Id.* ¶ 10.) Mr. Langer attempted to park in the Reprohaus parking lot. (*Id.* ¶¶ 10, 17.) Mr. Langer was not able to find a handicap-accessible parking space for his van in the Reprohaus lot. (*Id.* ¶¶ 13–17.) Consequently, Mr. Langer could not park in the Reprohaus lot, but instead had to park in a different lot in the area. (*Id.* ¶

17.) Mr. Langer alleges he intends to return and patronize the Reprohaus lot in the future. (*Id.* ¶18.) In late September of 2015, Mr. Taing "made the executive decision to not allow the parking lot to be used" by members of the public attending events at Petco Park. (Taing Decl. ¶ 8.) Mr. Langer filed this action on October 29, 2015.

## II.     LEGAL STANDARD

Under Rule 12 of the Federal Rules of Civil Procedure, a party may move to dismiss a claim based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Article III of the Constitution restricts the exercise of the judicial power to "actual, ongoing cases or controversies." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (internal quotation marks omitted). Thus, "[t]o qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). A case or controversy becomes moot, and thus no longer suitable for adjudication, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496, (1969).

The focus of the mootness inquiry is whether the court can grant effective relief to a litigant seeking a favorable judicial decision. *See NASD Dispute Resolution, Inc. v. Judicial Council of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007) (explaining that the test for mootness is whether the court can grant a litigant any effective relief in the event it decides the matter on the merits in the litigant's favor); *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."). If a court's determination of an issue presented will not "admit[] of

specific relief," or cannot otherwise affect the rights of the litigants in the case before it, then the court must dismiss the case due to lack of jurisdiction. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937); *see North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004) ("[A] case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless."); *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."). The mootness doctrine thus ensures the federal courts properly restrict themselves to deciding cases and controversies capable of legal resolution, while avoiding improper declarations on abstract propositions of law. *See Hall v. Beals*, 396 U.S. 45, 48 (1969); *Spencer v. Kemna*, 523 U.S. 1, 18 (1998) ("[Federal courts] are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.").

A jurisdictional attack under Rule 12(b)(1) can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction, and the court is limited in its review to the allegations in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. *Id.* Therefore, under a factual attack, the allegations in the complaint are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its

burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

## III.   DISCUSSION

Plaintiff's lone federal claim is an alleged violation of Title III of the Americans with Disabilities Act ("ADA"). The ADA prohibits discrimination that interferes with disabled individuals' "full and equal enjoyment" of places of public accommodation. 42 U.S.C. § 12182(a). Under the ADA, unlawful discrimination occurs when a disabled individual is subjected "to a denial of the opportunity . . . to participate in or benefit from the . . . accommodations of an entity." *Id.* § 12182(b)(1)(A)(i). The ADA defines a disabled individual as one whose physical or mental impairment substantially limits one or more major life activities. *Id.* § 12102(1)(A).

The ADA Accessibility Guidelines ("ADAAG") provide "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Pursuant to the ADAAG, any facility classified as a public accommodation under the ADA with 1–25 parking spaces must provide a minimum of one accessible parking space. 2010 ADAAG Standards § 208.2, 36 C.F.R. Pt. 1191, App. B. In order for a parking space to be considered accessible, it must comply with the specific guidelines of section 502 of the standards, which include minimum width, signage, and access aisle requirements. *Id.* §§ 208.2, 502.2, 502.6.

//

The only available remedy to private plaintiffs under the ADA is injunctive relief. 42 U.S.C. §§ 12188(a)(1), 2000a-3(a). Because this is the sole remedy, a plaintiff pursuing injunctive relief must demonstrate, in addition to the traditional elements of standing, a "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In the context of an ADA claim, a plaintiff can satisfy this requirement by "demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Chapman*, 631 F.3d at 944.

Defendants challenge this Court's subject matter jurisdiction over Plaintiff's ADA claim. Because Defendants present a factual challenge, this Court is permitted to consider affidavits, declarations, exhibits, and other evidence submitted by the parties, and is not required to accept as true the allegations in the complaint. *See McCarthy*, 850 F.2d at 560. In support of their motion to dismiss, Defendants provide the declaration of Tito Taing, the owner and President of Reprohaus. Because Mr. Taing decided to not allow the public parking arrangement in late September of 2015 and Plaintiff filed his Complaint on October 29, 2015, Defendants argue Plaintiff's ADA claim is moot and, as a result, this Court lacks jurisdiction. (Defs.' Mot. 6:23–8:2.)

When a motion to dismiss on mootness grounds involves the moving party's voluntary cessation of unlawful conduct, courts demand a heightened standard of persuasion from the moving party before granting the motion. *E.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000) (noting the "stringent" and "formidable burden" defendants face when claiming their voluntary conduct moots a case); *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1953) (discussing the "heavy burden of persuasion" that rests on the party asserting mootness on the basis of voluntary cessation of conduct). The court's interest in preventing defendants from returning to their old unlawful ways and efficiently determining the legality of practices militates against decisions

in favor of mootness. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

In order to dismiss a claim as moot based on the voluntary cessation of the complained of unlawful behavior, the moving party must prove that subsequent events make it "absolutely clear" that the alleged wrongful behavior could not reasonably be expected to recur. *Friends of the Earth*, 528 U.S. at 190. "Such a burden will typically be met only by changes that are permanent in nature and that foreclose a reasonable chance of recurrence of the challenged conduct." *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004). When determining whether behavior can reasonably be expected to recur, courts consider various issues, such as the (a) motivation behind the conduct, (b) reasons for the change in conduct, (c) volitional nature of the conduct, (d) length of time between the change in conduct and the complaint, and (e) ownership status of the defendant in relation to the property. *See Rosebrock v. Mathis*, 745 F. 3d 963, 972 (9th Cir. 2014) (noting in the governmental policy context that mootness is more likely if evidenced by language that is unequivocal in tone, the case in question was the catalyst for the change in policy, and the policy has been in place for a long time); *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013) (deeming that courts will be less inclined to find mootness where a new policy "could be easily abandoned or altered in the future" because that type of policy is not "the kind of permanent change that proves voluntary cessation"); *Langer v. Kacha*, No. 14-cv-2610-BAS(KSC), 2016 WL 524440, at *7–9 (S.D. Cal. Feb. 10, 2016) (finding an ADA claim moot because the defendants' parking lot was only available to restaurant patrons for brief periods of time on a temporary basis because nearby street parking was blocked by infrequent construction, the lot had not been made available to the public since twenty years earlier, and the defendants were the owners of the lot and made unequivocal statements that the lot would not be open to the public in the future); *White*, 227 F.3d at 1242–44; *Friends of the Earth*, 528 U.S. at 189–90.

//

In this case, based on Plaintiff's allegations and evidence submitted by Defendants, the Court finds the following facts are uncontroverted for the purpose of this motion:

(1) Reprohaus is a commercial printing business located five blocks away from Petco Park. (Taing Decl. ¶¶ 2–3; Defs.' Mot. 3:7–10.)

(2) Reprohaus leases the property on which the parking lot is located at 1400 L Street, San Diego, California, 92101. (Taing Decl. ¶ 4.)

(3) The Reprohaus parking lot does not have any handicap-accessible parking spaces conforming to the requirements of the ADA and the ADAAG. (Compl. ¶¶ 13–14; Defs.' Mot. 6:14–15.)

(4) In the summer of 2015, Tito Taing, the owner and President of Reprohaus, allowed the lot to be made available to members of the public attending events at Petco Park. (Taing Decl. ¶ 7.)

(5) As part of this parking arrangement, the Reprohaus lot was managed by employees of Reprohaus and patrons of events at Petco Park paid a fee in exchange for the convenience of parking in the lot. (Defs.' Mot. 1:6–8, 6:10–11; Compl. ¶ 10.)

(6) Mr. Langer is a paraplegic who uses a wheelchair for mobility and is disabled as defined under the ADA. (Compl. ¶ 1.)

(7) Mr. Langer attended a baseball game at Petco Park in September of 2015. (Compl. ¶ 10.)

(8) Mr. Langer attempted to park in the Reprohaus lot and did not find a handicap-accessible parking space in the lot. (Compl. ¶¶ 13–17.)

(9) In late September of 2015, Mr. Taing "made the executive decision to not allow the Reprohaus parking lot to be used in this regard." (Taing Decl. ¶ 8.)

//
//

Based on these facts, the Court finds that Defendants have failed to adequately support their jurisdictional challenge. The record demonstrates the public parking arrangement on the Reprohaus lot was a profitable venture, which occurred on a regular basis for many months. The parking lot was open on a first-come, first-serve basis to members of the public attending baseball games and other events at Petco Park. In late September of 2015, Reprohaus's owner made the "executive decision" to no longer allow the public parking arrangement. Interestingly, this decision came only a few days before the end of the baseball season. Plaintiff filed his Complaint about a month after Mr. Taing made his decision in regards to the Reprohaus lot.

Based on the evidence presented, Defendants have not sufficiently met their burden of persuading the Court that Plaintiff's injury cannot reasonably be expected to recur. *See Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1953). No portion of the factual record presented by Defendants forestalls the possibility that the public parking arrangement will be used on the lot in the future by Reprohaus or by a future tenant of the property. Defendants argue that the owner of Reprohaus has "unequivocally stated he has no intent in the future to permit" the public to park in the lot and Defendants "do not intend to ever offer this temporary parking again." (Defs.' Mot. 2:23–25, 6:25–26.) However, such statements are not contained in the declaration of Mr. Taing nor can they be found in any other evidentiary document submitted to the Court. Arguments of counsel are not evidence.

Moreover, Defendants provide no evidence that Reprohaus will not reinstate the public parking arrangement in the future. Declaring that a practice or course of conduct has ceased bears little to no weight on a court's determination of the possibility of its recurrence in the future. *See Lyons*, 461 U.S. 95, 101 (noting in the government policy context that a citywide policy suspending an activity would not moot an otherwise valid claim for injunctive relief because the policy by its terms was not permanent); *White*, 227 F.3d at 1243–44 (finding in favor of mootness because the defendant's new policy was broad in scope, unequivocal in tone, and

represented a permanent change, not a temporary policy that the agency would refute once litigation concluded). Further, a declaration made by the owner of Reprohaus, a tenant of the property, does not preclude the prospect that the public parking arrangement will be reinstated under a different tenant in the future. Defendants did not submit any declarations of the property owners in regards to the possibility of a public parking arrangement on the lot in the future. Thus, this Court finds Defendants have not met their burden of establishing that Plaintiff's harm cannot reasonably be expected to recur.

Defendants argue that Plaintiff's claim is moot because the parking arrangement was discontinued in late September of 2015, approximately a month before Plaintiff filed his Complaint. (Defs.' Mot. 6:23–8:2.) In support of mootness, Defendants cite to *Kohler v. Islands Restaurants*, *LP*, 956 F. Supp. 2d 1170, 1173–74 (S.D. Cal. 2013). However, Defendants' reliance upon *Kohler* is misguided. In *Kohler*, the court found the defendant's mootness argument was lacking. 956 F. Supp. 2d at 1173–74. The defendant restaurant owner purportedly remedied the slope issue of accessible parking spaces and access aisles in the parking lot. *Id.* The defendant presented pictures of the corrected, ADA-compliant slope in various portions of the lot. *Id.* Further, the Vice-President of Real Estate and Development of the restaurant submitted a declaration that the parking lot had been completely redone to remedy the slope in compliance with ADAAG. *Id.* Nonetheless, the Court found the defendant had not satisfied the burden for mootness because the evidence presented merely showed that certain portions of the parking spaces were ADA compliant. *Id.*

Here, Defendants have merely shown that a regularly occurring public parking arrangement was suspended shortly before a lawsuit. *See United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952) (noting in the anti-trust context that "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit,

and there is probability of resumption"). In *Kohler*, the evidence did not allow the court to assume the entire area of the parking spaces was ADA compliant based on pictures of the slope for various portions of the lot. Similarly, this Court has been presented no evidence bearing on the potential for future use of the public parking arrangement.

Also, Defendants seem to overlook crucial distinctions between constructing physical alterations that are permanent in nature and choosing to no longer continue a practice. A defendant cannot easily modify or destroy a physical piece of construction after an ADA claim has been resolved. On the other hand, a defendant can easily decide to revert back to an activity after a claim is dismissed, especially when the motive of profit remains. Because the tenant of the property voluntarily chose to allow a profitable activity on the facility and thereby regularly granted access to members of the public on a first-come, first-serve basis, the voluntary cessation doctrine prevents this Court from finding Plaintiff's ADA claim moot when the only evidence provided by Defendants is a declaration of the tenant that the unlawful conduct was discontinued shortly before Plaintiff's Complaint was filed.

In addition, the case at bar is distinguishable from an ADA case recently brought before this Court. In *Kacha*, the defendant restaurant owners allowed parking on a temporary basis in a separately owned lot during occasional incidents of construction. 2016 WL 524440, at *7–9. The defendants in *Kacha* were the owners of the property on which the lot was located, and they made unequivocal statements that the parking arrangement would never be used in the future. *Id.* Here, in contrast, Reprohaus is only a tenant of the property on which the parking lot is located, and Reprohaus's owner declared only that he had decided to not allow the parking arrangement at a certain point in time.

Further, the defendants in *Kacha* instituted the temporary parking policy in response to isolated incidents of construction outside of their control. *Kacha*, 2016 WL 524440, at *7–9. However, the Reprohaus parking arrangement was not a

reaction to external circumstances, nor was it a temporary policy or isolated occurrence. Rather, the parking arrangement, which occurred on a regular basis, appears to have been the result of Mr. Taing's conscious choice, driven by a motivation for additional profit. These circumstances indicate Plaintiff's claim is not moot, as the volitional nature and the motivation behind the parking arrangement are important considerations bearing on the likelihood of recurrence. *See id.* at *8–9 (noting the significance of the fact that the parking arrangement only occurred during brief periods of construction outside of the defendants' control); *Bell*, 709 F.3d at 901 (finding the argument for mootness much weaker where the new policy "could be easily abandoned or altered in the future").

Last, because the Reprohaus lot is normally only available to employees and commercial clients, Defendants argue the parking lot is not a public accommodation and, thus, is not subject to the requirements of the ADA. (Defs.' Mot. 6:13–14.) Defendants claim occasional use of a private facility for public use does not convert the facility into a public accommodation. (Defs.' Mot. 3:10–12.) Yet, because Defendants' argument (i) goes to the merits of Plaintiff's claim, as opposed to this Court's jurisdiction, and (ii) is dependent upon material outside of Plaintiff's Complaint, it is not properly brought before this Court in a Rule 12(b)(1) motion. Consequently, the Court will not determine whether the Reprohaus lot is a public accommodation as defined under the ADA.[1]

//

//

---

[1] The Court notes, however, that it appears the Reprohaus parking lot was regularly available to members of the public on a first-come, first-serve basis during events at Petco Park for multiple months. A private facility can qualify as a public accommodation under the ADA if regularly made available to members of the public on a "first-come, first-serve basis." *See Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 758–60 (D. Or. 1997), *declined to follow on other grounds by Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1024 (9th Cir. 2008); *Jankey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 2d 1174, 1178–82 (C.D. Cal. 1998); *United States v. Lansdowne Swim Club*, 713 F. Supp. 785, 804 (E. D. Pa. 1989).

In sum, Defendants' factual challenge to this Court's jurisdiction fails. Defendants have not presented evidence making it "absolutely clear" that the non-compliant Reprohaus lot will not be made available to members of the public in the future. *See Friends of the Earth*, 528 U.S. at 189–190; *see also Grove v. De la Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005). Consequently, Plaintiff's ADA claim is not moot because Defendants have not established that the allegedly wrongful behavior cannot reasonably be expected to recur. *See Friends of the Earth*, 528 U.S. at 190–91. Accordingly, the Court denies Defendants' motion to dismiss.

### IV. CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Defendants' motion to dismiss for lack of subject matter jurisdiction (ECF No. 14).

**IT IS SO ORDERED.**

DATED: June 21, 2016

Hon. Cynthia Bashant
United States District Judge